We have the case of Henry Gillis et al, number 07-4080. Mr. Dulgence. Thank you, Your Honor. Good afternoon. Tom Dulgence for the Philadelphia District Attorney's Office for the Commonwealth Petitioners. And if I may, I'd like to reserve two minutes for rebuttal. I guess my first question is, if this matter goes through and you get a final judgment, you can still come back before us on this issue, could you not? Yes, in a different procedural setting, Your Honor. I mean, at that point, the state law, which defines the standards and the terms by which this discovery should be available, will have already essentially been violated or at least rendered irrelevant. Now, but the state law was passed when, in 2003? I believe 2002, maybe 2003. And the habeas here was filed in 2001? That is correct. And as of the time that he filed the habeas in 2001, he exhausted his federal claims in state court? He exhausted some claims. They are not the claims that he has in his habeas petition, is our position, Your Honor. But here, this would be a, he'd have to exhaust a state claim in state court? The DNA testing claim would be a state claim in state court. Yes, Your Honor. And what if the petitioner goes back to state court and follows through with the Pennsylvania statute and fails? He can come right back here, can't he? He can come back here, but at that point, Your Honor, I'd submit that the posture and the standards would be a little different. I think under the habeas statute, we'd be, we would say that the factual determination by the court below that this testing is either untimely or wouldn't prove his innocence would be subject to some deference. He could say that that was an unreasonable finding, whether unreasonable in terms of the facts or the law, but it would be subject to deference at that point. I think the point of the matter is that you'd be pretty much spinning wheels. You'd end up with another, what, 18 months, maybe two years by the time he goes back to the state court, makes an application. The state court decides, and then it wouldn't be the Supreme Court. That would be appealed. Then he would just come right back to the federal court. That's correct, Your Honor, but it's not simply a question of time. It's also a question of standards. I mean, our problem here is that he's been granted this DNA testing without ever meeting the standard that's required both by the state DNA law as well as its federal counterpart, which obviously doesn't apply here. It's a standard. It's like going back. It's almost like a reach back exhaustion is what you're asking for. It's going back to avail. He must go back under your view to avail himself of a state enhancement or something that happens in the state that allows him to pursue DNA testing after he's already in federal court. It happens two years after, so we're supposed to do what? Your Honor, I've cited in my brief cases for the proposition that the timing of the filing of the federal habeas petition doesn't divest the state court of jurisdiction. The exhaustion question is still live. That is, if the state court passes a law creating an avenue of relief after that point, the exhaustion- Which is the case here, right? I mean, it's undisputed that this DNA testing law didn't exist when the order first went into effect. Is that right? When he first filed the habeas petition, yes, Your Honor. The order, Judge Surik's order below, which was entered, I believe, towards the end of last year, fall of last year. When he entered that order and ordered the testing, by that point, the state DNA testing law did exist. There's no question that ... I mean, ultimately, Your Honor, this is a statutory question because exhaustion is a question of statute. It's defined by 2254-B-1. But the question is, does he really have to exhaust? After all, he's not really seeking relief. Remember, he has exhausted. It's sort of like he's filed in federal court and he has exhausted. Everybody agrees. Then, there's a new state law passed dealing with state DNA testing and then, somehow, we're supposed to say that now, we reach back and say, hmm, he hasn't exhausted. Well, Your Honor ... And we're supposed to do mandamus, too, on top of that. Well, Your Honor, if I may, we don't agree that he has exhausted. We believe his claims are utterly defaulted. Well, he hasn't exhausted, but does he really have to exhaust? This is a discovery issue. Right. He's not seeking relief of a claim. So why does he have to go back to the state court when he's not presenting any new claims? Your Honor, the habeas statute doesn't speak in terms of claims, if I may read it. It does speak in terms of relief. It speaks in terms of relief. The writ of habeas corpus shall not be granted unless, subsection A, the applicant has exhausted the remedies available in the courts of the state. And that, when you're talking about a claim for DNA testing, it fits. Now, rule six, the discovery rule for habeas, obviously gives the district court some discretion to avoid the order ... That begs a question. The order granting or denying habeas hasn't been issued yet. That's correct. So why does he have to exhaust? I mean, isn't that for the district judge to decide whether you properly exhausted your claims or not? The district court, in this case, ordered discovery before making any determination about exhaustion, although the court, after we sought mandamus in response to a directive from this court to file an opinion in support of its judgment, said in a footnote that the claims were exhausted, which is something that we dispute. But there's certainly been no finding that the habeas petition is timely, because it's untimely by a matter of years. What this court would be finding, and I don't know that any court has found this, at least none that I know, you never say never, but I don't believe a court has found, has granted discovery in a case where neither the request for discovery nor the underlying claim was exhausted in state court, and the claim, the petition itself is untimely. And there is, at this point ... That's a different issue, okay? We can get to the timeliness in a minute. But let's stick with the point that I think Judge Fuentes is going after, and maybe one way to do this is with a thought experiment. Assume for the sake of discussion that this case went back, and it went back to the state court, and the court there said, no, you don't meet the standards under our DNA statute. You don't get this testing. Then he files his habeas petition here. Again, he comes back to the district court and says, I've got a basis for asserting actual innocence in the statement of the nurse who heard the confession of this other individual. That's good cause, and I want DNA testing because I think it's going to further my claim of actual innocence. Assume all that for the sake of discussion. Would it be then your position that because the state said no under the state rules, that that trumps the good cause standard under rule six, and that he can never have DNA testing? Well, the good cause standard of rule six is clearly bounded by the rest of the habeas statute, including the deference provisions. So I guess to speculate about what would happen at that point is we would say, well, no, in fact, the quote, new evidence, unquote, doesn't prove you innocent. In fact, the state court's found that it doesn't, or that for some other reason, it's barred. He can come back and say, well, the state court was unreasonable in its fact finding or in its application of clearly established federal law, but he has no right, some free floating general right, to re-litigate every issue without the state court weighing in first. I mean, and that's why the exhaustion principle exists. Would your position be different if some other kind ... Is there something about DNA evidence that makes it different from any other kind of discovery question? Because at the bottom, this is a discovery issue, right? I agree with that, your honor. And the thing is, is that you can't, as we're standing here today, talk about every other possible permutation. I think the thing about the DNA test is that because there is a new specific Pennsylvania law about DNA testing. And so with other kinds of discovery, we might argue, well, you should have asked for that in state court. And they can come back, or he can come back and say, well, I was prevented, or my lawyer was ineffective. And we'll say, well, you exhaust that in state court, and there's a back and forth. And that's why there's discretion given to the district court judge, because at some point, someone has to ferret this out. But at this point, there is no dispute, but right now, there is an available avenue of relief. Now, I don't mean to say that he'll get relief necessarily, but there is an avenue for which this claim should be presented in state court. So you would send back, perhaps waste his 18 to 24 months, because he may not get what he's asking for back then. Come back here, and then do what? Assert res judicata. Right? Not res judicata, but assert the deference standard. Isn't that the back story? Asserting the deference standard is what is there. On that same point, help me understand something. If you go, if you have to go back to Pennsylvania under the Pennsylvania statute to exhaust, as you say, they have an actual innocence standard? Do they not? It's almost identical to the federal DNA statute. It's a prima facie showing of, assume the result that you want, Mr. McFarland. But that's not why he wants DNA, the DNA test, is it? He wants the DNA test in the federal habeas in order to establish the ineffective assistance of counsel claim. Isn't that correct? Well, at this point, yes. That's what he's saying. Well, then how would a decision of the Pennsylvania state court help or be collateral estoppel or re judicata in the federal case when he wants DNA testing for totally different purposes? Well, because he's, it goes back to the fact that he never exhausted this claim in the first place. That is, he says, he's now asserting an ineffectiveness claim. And I can get into the specifics of this ineffectiveness claim, but it's exactly the opposite of the ineffectiveness claim that he presented in direct appeal. There, he said, I want, my counsel was ineffective because he didn't test the blood, the downstairs blood, I'll call it. He didn't test the downstairs blood to prove that it did not belong to Eddie Sparango, my partner in crime. Now he says, my counsel should have tested the downstairs blood to show it did belong to Mr. Sparango. In other words, in state court, he said, my counsel should have proved X. And here he says, my counsel should have proved not X. It's exactly the opposite claim. And he never in state court said anything about fingernail, about testing the fingernail clippings. The jury knew that the fingernail clippings have been taken off the corpse of Sharon Halterman and that had been tested and that there was insufficient amounts to test. He didn't complain about his counsel not seeking retesting at all. What is so bad about just following through on the rule six order of Judge Sirk for discovery? Because it violates state law, because it would render state law irrelevant. Even though that state law came into being after he first came here? Yes. If that's true, then it's a saving jurisdictional escape hatch to file the federal habeas petition before 2010. How would you distinguish the Fourth Circuit's decision in Braxton? Braxton was a timely PCRA. It was, I believe, there was no question that it was exhausted in Braxton. And I forget the other particulars of that case, Your Honor, but I... So far, if it was timely or, again, your argument here is not timely, but I don't know of any argument that things aren't exhausted, but what does that have to do with where you resolve a particular 2254 rule that deals with 2254 applications, or a rule that's tailored to this rule six? Because rule six can't trump 2254 being 1A. You'll have to show there's no other means of obtaining relief in order to get the mandamus issued. But there is a means you can obtain relief, isn't there? In other words, once the district judge issues an order, you can appeal that order on the basis that there was a failure to exhaust. Your Honor, obviously, I see my time is up, if I could finish answering the question. Good. Obviously, we would do that, Your Honor, but in the meantime, there's a certain irreparable harm here. Number one, the state standards have not been... The Pennsylvania legislature hammered out standards to apply to these claims, and they've been rendered irrelevant in this case. We've been made to pay, where under the state's statute, we would not pay under these circumstances that the Attorney General's office would pay. The lab would be chosen by Mr. McFarland, as opposed to chosen by agreement of the parties or by the commonwealth under some circumstances. The state law would be rendered irrelevant, and in addition, DNA tests are consumptive in nature. I can't... Don't you think that if you actually went to Judge Sirk and said, these are our concerns, that every one of those things would get worked out? I mean, that's actually sort of the implication of Braxton, too, I think, that when the district judge in that case came back with the 75-page supplemental memorandum opinion, the circuit court was looking at that and saying, these concerns about the destruction of the evidence and who's doing the testing and the chain of custody and all that, it's apparent to us that these are things that can and will be worked out by the district court. Why should we assume that if you in good faith went to, as you no doubt would, to the district judge Sirk and talked about these things, that those types of concerns wouldn't get worked out? Just as the circuit court in Braxton indicated they'd be worked out in the district court in Virginia. They might be worked out, Your Honor, but remember, before the order was issued, when we raised these concerns, the district court didn't ask for any additional information about it. The order was issued without any concern for what was going on in state law under the Pennsylvania DNA statute. I suppose you're saying, well, we could file a motion for reconsideration, and that's true, but it seems to me that that's an extraordinary ... I'm not even suggesting something as formal as that. You've described concerns about specifics of the order, and maybe you'd call it a motion for reconsideration, or maybe you'd call it a discussion and a clarification, but if these to the state and threats to the evidence were presented to the district court, are you telling us that Judge Sirk refused to hear these things before and wouldn't hear them? No. He didn't explicitly refuse to hear them, and obviously I would try, but I think, Your Honor ... Again, I know my time's up, but I think, Your Honor, that ... It's okay. Believe me, you're on our tag. Thank you, Your Honor. I think ... I'm going to quote Judge Becker. What you're talking about undervalues, in a way, the exhaustion principle and the principle that state courts and state legislatures get to channel claims to their own courts and to present their own standards. Yeah, we're not trying to undervalue that. What I'm trying to do is to operate within the mandamus standard. We're not talking about an ordinary appeal here. You're asking for a writ of mandamus. In fact, why don't you speak to this? Judge Traxler's concurrence in Braxton, he says the following, It is substantially more difficult to demonstrate the court usurped power beyond its authority when the mandamus petition is directed at a matter committed to the discretion of the district court. Almost by definition, a court that is deciding a matter within its discretion is acting within its prescribed authority, even if the court technically makes the wrong decision. How is he wrong? Sounds pretty good, in fact. Well, Your Honor, I think the mandamus is especially suited to tangible, immediate conflicts between federal courts and state courts. And I think that ... Usually when there's irreparable harm, isn't there? Yes, and what I'm saying here, Your Honor, is that there is irreparable harm in this case. And when you say conflicts between state courts and federal courts, there's no conflicting state court ruling here. That's because they were never given a chance. That's because it didn't exist when he made his petition. No. Well, the exhaustion requirement, though, Your Honor, requires him to go back. And if he ... I get the feeling you're getting me into a sort of a time loop here. You say there's a conflict, but there was no conflict when he did it. And then you say, yeah, but there is a conflict now and you ought to go back in time. I mean ... Today. And the exhaustion ... Can you have it both ways? The exhaustion requirement requires him to go back today if there's an avenue of relief available today. I mean, it may be inconvenient. We may be looking at extra time, but this is a state law that was passed as part of a national movement, including the federal law that was passed, to make, to create state DNA laws. And it can't be that you can go to federal court and not even ... Remember, there were no standards applied here by the district court. There was no showing. He never was required to make a showing that if the DNA test came out a certain way, he would prove his innocence. You're pretty confident that if he goes back to the state, they'll say no? Yes. Well, but DNA testing can be exculpatory, couldn't it? Not in this case. Well, it can be exculpatory. It can be exculpatory. Doesn't the Commonwealth have an interest in the results of such a test? Absolutely, Your Honor.  So the DNA test is ... If it cannot be exculpatory in this case, then why do you want it to go back to get an answer that you think you already know? As Judge Jordan said, so then you can come back ... You really want your forum to be the state court rather than the federal court, isn't that right? As per the exhaustion rule, yes. And the reason you want that in this instance, is it fair to say, is because you believe that he can't make the showing necessary in the state court, and then this is over. Am I right? That's what we would argue. I imagine my opposing counsel would not admit that it would be over at that point. But it's not ... Judge Ambrose, I'm concerned because you're looking at me and asking this question as if we're forum shopping. McFarland is a state prisoner who was convicted of the brutal murder. Brutal murder. Ain't no doubt about it. And the question here is ... And he's been granted ... You and I did not create habeas. It's there. That's correct. And he's ... There's discovery that you're allowed under habeas, and what you're in effect asking us to do is to overrule a district court judge ordering discovery in his discretion of a district court. When it appears full well that he's allowed that discretion, as Judge Traxler notes in the Braxton case. Well, that's why I disagree, Your Honor, because I think in a case like this where it's clear that not only is the petition time barred, which is a threshold question, but the claims are clearly defaulted in addition to the exhaustion requirement. At some point, when you're talking about DNA testing, you have to worry about a regime that allows state prisoners to come to federal court and without meeting any standard for materiality, without meeting any standard of timeliness, without meeting any standard at all. And if you're right on that, you can later come back and say that Judge Sterk was wrong. And we will. But in the meantime ... Well, hold on just a minute. When you said without meeting any standard at all, there is a good cause standard. You acknowledge that, right? That's correct. It's not that there's no standard. That's correct. It's that there is a less exacting standard than under the state statute. Is that a fair statement? That's a very fair statement, Judge Jordan. Okay. Let me ask one more thing about the procedural posture that we're in right now. And there's no question, and believe me, I presume to speak for my colleagues, we've read the record. We know this was a horrific crime. We're not trying to evince a lack of regard for the efforts that the states made to bring to justice somebody that the jury convicted of murder. I repeat, though, we're trying to understand how your argument fits within the extraordinary remedy of a writ of meandamus. And so, you may have answered this, but let me pose it one more time to make sure I get it right. This discovery order is an order committed to the sound discretion of the district court. Discovery generally is. What makes this discovery order substantively different so as to put us in the realm of saying, as the Supreme Court has put it and has been repeated in many cases, this amounts to an exceptional, a usurpation of authority by the district court and not just a mistake maybe. Assume for the sake of discussion, he's just wrong. He's totally wrong. Judge Sirk blew it, blew it on timeliness, blew it on exhaustion, but doesn't meandamus standards tell us he can be wrong? Your Honor, I don't disagree that the district court enjoys discretion to order discovery generally and habeas less so than the normal case, but there's still discretion as long as the good cause standard is satisfied. And I don't disagree also, Your Honor, that it's a hard line to draw sometimes. What makes an order wrong or what makes it clearly wrong or what makes it a usurpation of power is sometimes not immediately clear. And obviously the court could decide that this just doesn't get there. But I think when you list the things that are going on with this order, you know, apart from the timeliness and the lack of exhaustion, when you list the things that are going on with this order, specifically the DNA testing statute and the fact that the district court required no showing of materiality, that at some point, Your Honor, you look at this, I look at this, and I say that's a usurpation. With all due respect to Judge Sirk, I mean, we've all... But when you say, as you just said, that it's a hard line to draw, since when does, or give me one example, when a federal appellate court says that yes, this is a hard line to draw and therefore we're going to issue a mandamus to the district judge telling him that in this hard line to draw, you were so decidedly wrong, it doesn't make sense. Your Honor, mandamus is rare, but it does issue in issues in discovery cases when there's some kind of... But usually because you believe that the line is long... For example, somebody sitting on a case, there's no line to draw. They sat on it for far too long or the judge just entirely misread something. Or there's a privilege that will be lost and there's no recovering it. But I think you're... I don't mean to contradict, but I think you're misunderstanding my point. My point is not that it's hard to tell whether he's wrong in this case. I think it's hard to tell whether he's so wrong in this case that you go to mandamus. And I think that's almost always true of any mandamus order, especially mandamus orders in discovery cases. And we've cited in our briefs... There aren't many of those cases in that there shouldn't be. Yeah, mighty, mighty, mighty rare. Mighty rare. But Judge Becker said in Ford Motor, in which we cite in our brief, that issues involving the scope of federal jurisdiction in comedy with federal and state law can justify mandamus. The United States Supreme Court in Roche v. Evaporated Milk enlisting what kinds of disputes can justify mandamus included the considerations of comedy between state and federal courts. If you compare that to what Judge Lineberger, the trial court... But right now, on this issue, if the issue was so clear in terms of the comedy between federal and state courts, why did the Fourth Circuit come down in favor of not granting mandamus? Your Honor... In an almost identical case. You know, Your Honor, I've read Braxton, and I wish I had it more at my fingertips. I know, obviously, that there's no time bar on exhaustion problem, but I suspect that much of what they were talking about had happened in state court, and I'm not sure exactly when the DNA statute in that case had been enacted and what the standards were. I'd love an opportunity to read the case again. What you've articulated here, though... Evidence could be somehow depleted, a host of other issues. I mean, it really is a... For someone writing a brief, on either side of this, Braxton gives the arguments both ways. Even if Judge Surik is completely wrong, wrong, wrong, and you nonetheless can appeal the wrongness of his decision, we still have to deny mandamus, don't we? Not necessarily, Your Honor. But you have inadequate relief. My argument, Your Honor, is that the violation of state law that would come with ordering us to surrender evidence in violation of state standards that are the same standards that Congress passed in the federal DNA statute is an irreparable harm. And so to that extent, you just flat disagree with Braxton, right? Yes. I mean, to the extent that's what Braxton says, yes. Maybe I'm reading it wrong, but Braxton seems to me to be saying just what Judge Fuentes is saying. You're going to give him a chance to appeal, and your argument is premised on the notion that our having to obey the order in and of itself is irreparable harm, which no later appeal fixes. It's like losing a privilege. It doesn't come back. Is that right? Yes. Ultimately, what he gets down to. Well, we're here for Mr. Shapiro, then. Thank you, Your Honor. Thank you. May it please the Court, Steve Shapiro on behalf of Respondent Robert McFarlane. Sorry, I put the emphasis on the wrong syllable. Judge Traxler, pardon me, is not the only one who believes. No, because I'm in Philadelphia. Judge Traxler is not the only one who has held that where a district court has discretion to enter an order, that mandamus is not appropriate. This Court has found the same thing in the Henry Chavez case, in Glenn Mead Trust v. Thompson. So has the Supreme Court in Alley Chemical v. Dave Line. Let me take you way back to the early 1950s. The Supreme Court in a case called Goosick has said that when you have a situation where you have a habeas, and this is from a military appeal, and then there was a later military provision, Article 53 put in, that might, had it been existent at the time of the initial proceedings, should have been availed. The Supreme Court says the policy, that what you should do is send it back. Stay the case and send it back. If a state procedure provides a remedy which, though available, has not been exhausted, the federal courts will not interfere. The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to the collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court has asked to correct, any interference by the federal court may be wholly needless. That policy is as well served whether the remedy which is available was existent at the time resort was had to the federal courts or was subsequently created, as indeed is implicit in cases that they have entered some certain judgment orders. Then it goes on. It's a principle of judicial administration. It should be is in no sense a suspension of the writ of federal habeas corpus. It is merely a deferment of the result of the writ until other corrective procedures are shown to be futile. It seems like even though this particular provision came out two years after, what's wrong with sending it back? The difference here, Your Honor, is that we are not pursuing a, the DNA testing is a discovery request. It is not a claim. The exhaustion requirement in section 2254B applies to claims, not discovery requests. And that's what three district court judges in Pennsylvania have found. So you're saying Musick dealt with claims. This just deals with a discovery request under Rule 6. Yes, Your Honor. Well, this is 2254B1A. There's not supposed to be any writ granted until, quote, the applicant has exhausted the remedies available in the courts of the state. And then it goes on in paragraph C to talk about an applicant shall not be deemed to have exhausted the remedies available in the courts of the state within the meaning of the section if he has the right under the law of the state to raise by any available procedure the question presented, not the claim presented, the question presented. If the question is whether or not the DNA ought to be taken out and retested, lo these many years later, and there's a specific state procedure available for it, how is it that you read into this statute the language claim when the statute, as Congress drafted it, talks about questions and state procedures, not claims? I agree the statute does not include the word claim. Right. So what do you point us to to say that this is not what your opponent says it is, which is a statute that directs federal courts to, he'd be more polite than this, but to tell federal courts to butt out until the state is finished doing what the state can do under its own procedures, even questions of evidence and discovery? The statute tells the federal court that it shall not grant habeas petition unless the claim is exhausted. Here, Judge Surek's order does not grant the habeas petition. Nothing about that order contradicts the exhaustion requirement set out in paragraph B. And all three district courts in Pennsylvania that have looked at this issue have all determined that this section 2254B applies only to claims, not to discovery requests. Then how do you answer your opponent's point that this would render the state statute a nullity? If we read it the way you're suggesting we read it, which may be the correct way, and we say anything that happens up to the point of the granting of habeas is stuff that doesn't have to be exhausted. That's what I hear you saying is until that habeas petition is granted, we're not worried about exhaustion stuff. You can't grant the petition where you're worried about exhaustion. But up to that point, discovery issues are totally within the discretion of the district court. What prevents every prisoner in a state proceeding from saying, I got a good cause standard in federal court. I have a much more exacting statute to meet in state court. I'm going to federal court. And thereby, I'm bypassing the state statute every time. In short, I'm going to use habeas discovery rules to nullify the state statute. What's your response to that? The good cause standard in federal court comes after the petitioner has to clear a whole bunch of other standards. First of all, he has to file a habeas petition, which gets by the summary screening procedures in habeas rule four. The district court has to look at it and can decide to dismiss it off the course. If you then satisfy habeas rule four, the district court must order the commonwealth to respond to the petition. That could be a motion to dismiss. It could be an answer. So what you're saying is because it's hard to get over the initial hurdles, the discrepancy in the DNA testing statute and the good cause standard shouldn't make a difference to this court? Yes. And the prospect that getting past the initial hurdles poses a challenge means we don't have to worry about nullifying the statute because even though the ones who make it past the hurdles will be able to ignore the statute, that's not really a big issue because there won't be many of them? I agree with that. I'm not saying that I believe it. I'm trying to reflect your argument. Have I accurately done that? You have. You have, Your Honor. What was the good cause finding that the magistrate made? Here Magistrate Judge Angell found that as we presented, Mr. McFarland's blood is type O. The victim had type A blood. The blood found in all over different parts of the crime scene was type B. McFarland's counsel did not test his own client's blood during the criminal trial. We didn't know he had type A blood until we took this case and filed the habeas petition. So how does testing the fingernail blood advance your case then? Well, here the Commonwealth's entire case is based on the testimony of Edward Sparango who claims that McFarland committed this murder. Sparango claims that at the time the murder took place, Sparango left the room to go to the bathroom. When he came back, she was dead. Are you trying to say that he's the one who did it? Right. And that's why we are asking and that's why the district court's order orders the... But that sounds like an actual innocence claim. Mr. Dolgeness suggests that you're really just trying to prove innocence, not really ineffective assistance of counsel. Well, we're also trying to prove both. Is it not what the state statute is for? Well, the state statute, as you pointed out, the standard there is that the petitioner would have to show under the Pennsylvania DNA testing statute that he's actually innocent of the crime in order to obtain the DNA test. But isn't that exactly what you're trying to do with the blood testing? Well, with his blood testing, we show two things. One, that yes, McFarland is actually innocent. If in fact Edward Sparango's blood is found under the victim's fingernails, how could that be? If he wasn't even in the room at the time of this murder, that makes no sense whatsoever. Well, most of that shows he's a liar. It doesn't show that McFarland's innocent, right? I mean, how does proving that the victim scratched Sparango mean McFarland didn't strangle her, doesn't follow? What it means is that Sparango, who confessed to the nurse that he had to kill her, you now find on top of that that his blood is underneath the victim's fingernails. It shows that, yes, he was lying, but we also believe it shows that McFarland did not commit this crime. Because you read Sparango's comment in conjunction with that to mean McFarland is actually innocent. Right. And Sparango never testified that he touched her. None of his testimony explains how his blood possibly could have ended up under the victim's fingernails. Now, one of the strange requirements... Right. So the contention is that McFarland's lawyer should have done all of that. Exactly. And failed to do so, and because of that deficiency, your client was prejudiced and should have... And you want a new trial. Yes, we want a new trial at which we can introduce what we believe will be the exculpatory DNA evidence as well as tell the jury that McFarland's... Of course, the DNA results may not help you at all. It's possible. Why don't you talk for a minute, if you would, about the timeliness issue. I take it there's some sense of frustration, and perhaps legitimately so, that Judge Surik ordered DNA testing without deciding first whether this was a timely petition at all. Your opponent says that's a threshold issue, and they're entitled before they're put to the expense and the various risks associated... to know that they're doing it in a case where Mr. McFarland actually has a petition that can survive a timeliness challenge. What's the response you make to that, hey, it's a threshold issue point? Several. First of all, Rule 6 and nothing else in AEDPA that I can see requires the district court to find and make a determination about timeliness one way or another before it allows discovery. So it's not a threshold issue, that's your point? It's not a threshold issue, yes. That's my point. Just to get back to a previous point that Judge Fuentes raised, we are also asking for this evidence not only to show actual innocence, but also that counsel was ineffective. I just wanted to make sure I was clear on that. Your claims are ineffective assistance and sufficiency of the evidence? Yes. Well, is your DNA test request also for the sufficiency aspect of behaviors? Yes. Or is it just the ineffective assistance? It's both, it's also the insufficiency. Here, again, the district court had discretion under Rule 6 to allow this discovery. Now, what that means is that the standard that this court has to apply when it's ruling on the petition is even more narrow than the abuse of discretion standard, and I think this is what Judge Trexler was talking about. This court has held, the Supreme Court has held, that mandamus is appropriate where the district court did not have the power to issue the order it issued or where it usurped its judicial authority, and that's simply not the case here. I would also note that in order to prevail on the petition, the Commonwealth must show that its right to relief is indisputable. That you've covered in your briefing. Okay. Appreciate it. Unless there are any other questions, I will see you in my remaining time at the court. No further questions. Thank you very much, Mr. Shapiro. Mr. Daughters. Just a couple of points, Your Honors. First, I want to address Mr. Shapiro's point that the habeas cause discovery requirement is sufficiently difficult and the other habeas procedural hurdles are sufficiently difficult to dissuade petitioners from coming directly to federal court. This case proves this argument to be false because here McFarland filed his habeas petition and we responded to the... He filed it along with his discovery motion and we responded saying untimely, defaulted, and the district court granted discovery without making a holding as to any of these things. There's been no finding that these claims aren't frivolous. There's been no finding that the petition is timely or the claims aren't defaulted. So in fact, it might be that there's, in theory, some series of thresholds or some series of hurdles over which the petitioner has to jump, but in this case, that didn't happen. And finally, if I could, you know, during Mr. Shapiro's argument, he spoke briefly about the elephant in the room, which is that the DNA testing would or would not prove his innocence. The fact is, this was not a blood case. Judge Leinberger, the trial court judge, said at one point, there is no evidence that there was any blood at all in this case. This is a strangulation death. So, uh, the judge, he allowed some clothing to come in. With respect to the downstairs blood... But they tried to show that there's a connection  and the person who strangled her, I assume. Yes, and the fingernail blood was never mentioned at all in state court on the appeals. And that may be part of the ineffective assistance of counsel claim. Well... But, Your Honor, the fingernails, the fingernail blood and the downstairs blood would not prove his innocence at all. And remember, the whole thing about this case is that the downstairs blood, the jury knew the downstairs blood was not McFarlane's and they knew it was not the victim's. The jury knew this. It is not a startling discovery. That's just the way that... They knew the downstairs blood was Sparengo's, right? They believed it was Sparengo's. And now, as I understand, Mr. Shapiro says that the downstairs blood has to be tested to prove what the jury already knew, which is strange. I guess the only point now is to get to whether the fingernail blood belonged to Sparengo. And remember, the victim was murdered sitting on the floor. Her attacker strangled her with a clothesline from behind and above. What are the chances that the blood in the fingernails belonged to the killer? And the response may be, well, there's nothing to lose. Why not test it? Well, that's because... You may be talking about actual innocence. The other side may be talking about ineffective sentences of counsel. You should have at least played this out as a possibility. I mean, it looks like only one of two persons could have done the killing here. Or both of them, as we've always said. We have always said both of them. And if Mr. Sparengo is the killer, Mr. McFarland, who ordered him to kill, is just as guilty. There is no theory which could prove the actual innocence. And what's happening here is that the case is being drawn out by rather half-baked... Well, one person said that Mr. Sparengo purportedly said to the nurse that he was told to do this by McFarland. Correct, which would mean McFarland is guilty. The evidence I think you have at trial is that McFarland helped dispose of the body along with Sparengo. They did it together, is that correct? Yes, and McFarland told Sparengo according to Sparengo's trial testimony that if he didn't cooperate, he would kill him. So it's entirely consistent. All right. Thank you very much. Thank you both, the counsel, for a well-presented argument. We'll take the matter under advisement.